1
2
3
4
5
6
7                              UNITED STATES DISTRICT COURT

8                           NORTHERN DISTRICT OF CALIFORNIA

9
10
11   JAMES LEE HUGHES, JR.,                        No. C 07-1143 WHA (PR)

12              Petitioner,                        **ORDER DENYING PETITION FOR
                                                   WRIT OF HABEAS CORPUS**
13       v.

14   D. L. RUNNELS, Warden,

15              Respondent.
     _____/
16

17                                  **INTRODUCTION**

18          This is a federal habeas corpus action filed pursuant to 28 U.S.C. 2254 by a *pro se*

19   state prisoner.  For the reasons set forth below, the petition is **DENIED**.

20                                  **BACKGROUND**

21          In 2005, a San Mateo Superior Court jury convicted petitioner of, *inter alia*, assault

22   and attempted murder, consequent to which petitioner was sentenced to 155 years-to-life in

23   state prison.  Petitioner filed the instant federal habeas petition after he was denied, with one

24   exception, relief on direct and collateral state review.  The state appellate court did vacate a

25   conviction for assault with a semiautomatic weapon (Count 3; Cal. Pen. Code § 245(b)),

26   relief which did not reduce the aggregate prison sentence.

27          Evidence presented at trial demonstrated that in March 2003, petitioner robbed two

28   banks:

**United States District Court**
For the Northern District of California

A San Bruno bank was robbed on March 4, 2003 [also known as the Citibank robbery], and a Daly City bank was robbed on March 27, 2003 [also known as the Bank of America robbery]. In both instances, an armed African-American man wearing a suit, fedora, sunglasses, gloves, and face make-up entered the bank shortly after it opened, announced that he was there to rob the bank, threw white cloth bags to bank employees, and held the employees at gunpoint until the bags were filled with money. The man fled after his demands were met. Employees from both banks identified [petitioner] as the robber.

After the second robbery, [petitioner] fled the scene in a van and Daly City police officer Terrence Chew gave chase. The van was registered in [petitioner's] name. Officer Chew pursued the van on his police motorcycle, with lights on and siren sounding, as the van raced down city streets at excessive speeds, recklessly crossed lanes of traffic, and ran a red light. The van crashed into a pickup truck and [petitioner] exited the van. The police officer stopped his motorcycle and was putting his kickstand down when [petitioner] ran toward an open space near houses, turned, and fired a gunshot at the officer from 30 feet away. The officer was not struck but the shot came within a foot or two. [Petitioner] ran away and the officer initially followed, then broke off the pursuit.

The police later recovered two bags containing $35,653 from the scene of the shooting, as well as a firearm. The firearm was jammed, and a police officer testified that "it looked like the weapon had been fired and upon pulling the trigger for a second time the next round didn't carry up from the magazine into the barrel, itself." However, the officer conceded that the weapon could have jammed after the first shot without the trigger being pulled a second time.

On the morning of the shooting, [petitioner] telephoned his brother-in-law for assistance. [Petitioner] said he robbed a bank and had to fire on a police officer who was chasing him because the officer was close to apprehending him. The brother-in-law reported his conversation with [petitioner] to the authorities. [Petitioner] was arrested with $4,545 and a one-way bus ticket to Miami for March 28, 2003 in his possession.

(Ans., Ex. CC at 2–3.)

As grounds for federal habeas relief, petitioner alleges that (1) there was insufficient evidence for the jury to find that petitioner shot at Officer Chew; (2) the trial court improperly denied petitioner's motion for severance; (3) appellate counsel was ineffective; (4) the trial court improperly denied petitioner's *Pitchess* and suppression motions, as well as his motion to re-open both motions; (5) the trial court's grant of use immunity to Jamecia Henry, petitioner's getaway driver, was improperly withheld from the jury; (6) there was insufficient evidence for the jury to find that petitioner robbed the Citibank in San Bruno and the Bank of America in Daly City; (7) the trial court improperly denied petitioner's motion to disqualify and recuse the San Mateo County District Attorney's Office; (8) the

2

trial court erred by failing to give standard CALJIC instructions on how to evaluate accomplice testimony and confidential informant testimony; (9) the trial court erred by failing to instruct the jury to determine whether Maurice Michael McCant was an accomplice as a matter of law; (10) the prosecutor committed misconduct denying petitioner a fundamentally fair trial; and (11) defense counsel was ineffective.

### STANDARD OF REVIEW

A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). The court may not grant a petition with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" 28 U.S.C. 2254(d)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. (Terry) Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254 (d)(2). The court must presume as correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   The state court decision to which section 2254(d) applies is the "last reasoned

2   decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker*

3   *v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  When there is no reasoned opinion

4   from the highest state court to consider the petitioner's claims, the court looks to the last

5   reasoned opinion. *See Nunnemaker* at 801–06; *Shackleford v. Hubbard*, 234 F.3d 1072,

6   1079, n. 2 (9th Cir. 2000).  Where the state court gives no reasoned explanation of its

7   decision on a petitioner's federal claim and there is no reasoned lower court decision on the

8   claim, a review of the record is the only means of deciding whether the state court's

9   decision was objectively reasonable. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.

10  2003).  When confronted with such a decision, a federal court should conduct "an

11  independent review of the record" to determine whether the state court's decision was an

12  unreasonable application of clearly established federal law. *Ibid.*

13     If constitutional error is found, habeas relief is warranted only if the error had a

14  "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v.*

15  *Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638

16  (1993)).

17                                   **DISCUSSION**

18  **1.     Sufficiency of the Evidence**

19     Petitioner claims that there was insufficient evidence to support his conviction for

20  the premeditated attempted murder of Officer Chew (Pet. at 6).[1]  Petitioner bases his claim

21  on his assertion that Officer Chew failed to identify him as the shooter (*ibid*).  The state

22  appellate court rejected this claim:

> [Petitioner] argues that the record is devoid of any evidence that [petitioner]
> planned to kill Officer Chew.  Yet, the record shows that [petitioner] armed
> himself for a bank robbery and continued to carry the firearm with him when
> he exited the crashed getaway vehicle to escape on foot.  [Petitioner's]
> assertion that he was carrying the weapon only to "facilitate the robbery"
> cloaks the fact that a robbery is facilitated by a firearm precisely because it
> poses a fatal threat . . . [petitioner] armed himself to rob a bank and shot at a
> pursuing police officer for the admitted purpose of avoiding apprehension.

---

[1] The operative petition, the only version of the petition that will be cited in this order, Docket No. 13, will be referred to as the petition, even though it is in fact the second amended petition.

4

The officer was parking his motorcycle at the time and had not fired upon [petitioner] or even unholstered a weapon. [Petitioner's] attempt to kill the officer thus appears to be a considered response to interference with his plan to escape with stolen money, not a rash impulse. There is also evidence of planning at the time of the shooting. Officer Chew testified that [petitioner] ran behind an occupied pickup truck as he fired upon the officer, "put[ting] the driver between he and I [*sic*]; therefore, I couldn't return fire."

As to motive, [petitioner] admitted to his brother-in-law that he had to fire on a police officer who was chasing him because the officer was close to apprehending him. Motive is also plain from the circumstances — the police officer stood in the way of [petitioner's] escape with over $35,000 in stolen money . . . The manner of the attempted killing also evinces preexisting reflection. After exiting the crashed getaway vehicle, [petitioner] stopped, turned, and shot at the police officer from only 30 feet away. The shot came within one or two feet of striking the officer. While only one shot was fired, that was because the gun jammed. [Petitioner] now argues that he fired impulsively only to escape but it is undisputed that he did not fire over the officer's head or down at his feet but directly at him. A fleeing suspect who open fires on an armed police officer "knows he has chosen a 'kill or be killed' confrontation." [Citation removed.] Moreover, as noted above, [petitioner] fired upon the officer before the officer even approached [petitioner]. "The lack of provocation by the victim leads to an inference that an attack was the result of a deliberate plan rather than a 'rash explosion of violence.'" [Citation removed.]

(Ans., Ex. CC at 4–6).

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *See id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *See Jackson*, 443 U.S. at 324.

A premeditated killing under California law is a "killing [that] occurred as a result of preexisting reflection rather than unconsidered or rash impulse." The process of premeditation and deliberation "does not require any extended period of time." "The true test is not the duration of time as much as it is the extend of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." Planning activity, motive and the manner of the killing are significant factors to

1  consider when determining whether the killing was a result of preexisting reflection (Ans.,

2  Ex. CC at 4).

3        Under these legal principles, petitioner's claim cannot succeed.  The record clearly

4  supports the conclusion that a rational trier of fact could have found that petitioner's

5  attempted killing of Officer Chew was the result of preexisting reflection rather than

6  unconsidered or rash impulse, as the evidence put forth by state appellate court

7  demonstrates.  Planning is evident from the facts that petitioner took a gun with him on the

8  robbery, and shot Chew as he was escaping.  Motive is apparent from petitioner's own

9  admissions to his brother-in-law that he shot Chew because Chew was about to arrest

10 petitioner.  Also, petitioner shot Chew in a manner that indicates there was a preexisting

11 reflection, especially when one considers that petitioner fired at Officer Chew while he

12 (Chew) was parking (and therefore before he had unholstered his weapon or approached

13 petitioner), and took cover behind a vehicle prior to shooting.

14       Petitioner's contention that Officer Chew could not identify petitioner is unavailing,

15 as there was a great deal of other evidence supporting the jury's finding.  This evidence

16 includes petitioner's own admission that he shot Chew (Ans., Ex. ? at 765–72), the

17 statement of Jamecia Henry, petitioner's getaway driver, to police regarding the robbery

18 and the escape (*id.* at 974–86), the testimony of several witnesses that connected petitioner

19 to the robbery and from the robbery to his escape vehicle (*id.* at 806–39, 934–938), a

20 vehicle Chew attempted to intercept after hearing a description of it over the police radio

21 (*id.* at 540–54), and testimony that police dogs were able to track a shirt discarded by

22 petitioner at the crash site to a spot where money later identified as that stolen from the

23 bank was found (*id.* at 1057–58, 1092–93, 1195).  On such a record, petitioner's claim must

24 be DENIED.

25 **2.      Denial of Severance Motion**

26       Petitioner claims that the trial court violated his due process rights when it denied

27 his motion to sever the case against him into three separate trials, one for each of the

28 robberies with which he was charged (Pet. at 6).  The denial of severance violated his

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

rights, according to petitioner, because the Bank of America robbery was more inflammatory than the other two (it, unlike the other two, involved the shooting of a police officer), and as such would bolster the two relatively weaker bank robbery cases. The charges relating to the third robbery (the "Wells Fargo robbery") were dropped prior to jury selection (Ans., Ex. ? at ct 786; Ex. O at 124–25). Petitioner further alleges that the joinder prevented him from testifying regarding the Citibank and Wells Fargo robberies because he planned to assert his Fifth Amendment privilege as to the Bank of America robbery. The state appellate court did not address these claims in its written opinion.

The trial court denied petitioner's severance motion on grounds that (1) the photographs of petitioner from the two robberies were identical, (2) the evidence was largely not cross-admissible, (3) it was reasonable to think that a jury could keep the evidence and accusations related to and arising from one set of charges separate from the evidence and accusations of the others, (4) petitioner's assertion that joinder would prevent his testifying in his defense was not unsupported, and (5) it was unlikely that petitioner was sincere about wanting to testify, owing to the fact that had he testified, his prior convictions would be presented to the jury (Ans., Ex. G at 10–14).

A federal court reviewing a state conviction under 28 U.S.C. 2254 does not concern itself with state law governing severance or joinder in state trials. *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997). Nor is it concerned with the procedural right to severance afforded in federal trials. *Id.* Its inquiry is limited to the petitioner's right to a fair trial under the United States Constitution. To prevail, therefore, the petitioner must demonstrate that the state court's denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair. *Id.* In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict. *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000). Of particular importance in assessing prejudice are "the cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another." *Davis v. Woodford*, 333 F.3d 982, 991 (9th Cir. 2003) (citations removed).   3

United States District Court
For the Northern District of California

1    Petitioner's claim fails.  First, petitioner has not shown, nor is there any evidence in
2    the record to support a conclusion that, there a danger of the cross-admissibility of
3    evidence.  The two bank robberies — the third was dismissed before jury selection — were
4    committed on different days in different banks in different cities, and therefore involved
5    entirely different witnesses for each crime.  Second, petitioner has not shown, nor is there
6    anything in the record to support a conclusion that, there was a danger of spillover from the
7    Bank of America robbery, which involved the attempted shooting of Officer Chew, and the
8    Citibank robbery, which did not involved a shooting.  Furthermore, calling one set of
9    charges weaker than the other is not supported by the record.  The jury was presented with
10   very strong eyewitness and videotape evidence of both robberies, as noted above.
11   Petitioner's real concern is that the Bank of America robbery may have been inflammatory
12   in that it involved an attempted murder charge, the attendant histrionics of which would
13   have unconstitutionally influenced the jury to convict him of the charges arising from the
14   Citibank robbery.  Petitioner, however, has not shown that there was prejudice.  As stated
15   above, the record is replete with eyewitness and videotape evidence to support the jury's
16   findings as to both robberies.

17       Third, petitioner's contention that the denial of severance deprived him of exercising
18   his Fifth Amendment rights fails.  As an initial matter, this part of his claim is not properly
19   before the Court.  It appeared in his initial petition, but not in the second amended, and now
20   operative, petition.  As an amended petition completely replaces a prior petition,
21   petitioner's claim was waived, and therefore is not properly presented to this Court.  Even
22   if the claim were properly before this Court, it would lack merit.  Petitioner has not stated
23   what evidence he would provided by way of his testimony, and his bare assertion that he
24   was denied his Fifth Amendment rights is not sufficient.  Furthermore, his assertion is
25   difficult to credit considering that if he had taken the stand, he would have to answer
26   questions regarding his considerable criminal history.  Based on the foregoing, petitioner's
27   claim is DENIED.

28

United States District Court
For the Northern District of California

### 3. Assistance of Appellate Counsel

Petitioner claims that appellate counsel rendered ineffective assistance by failing to raise various issues on appeal (Pet. at 6). The state appellate court did not address petitioner's claims against appellate counsel in its written opinion.

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986). A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *Miller*, 882 F.2d at 1434 n.9 (citing *Strickland*, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849).

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751–54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See Miller* at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason — because he declined to raise a weak issue. *Id.*

Petitioner's claim is without merit. Petitioner's claim is premised on Claims 7–10, which are discussed below. As those claims lack merit, appellate counsel cannot have rendered ineffective assistance by failing to raise them on appeal. Put another way, petitioner is unable to show that appellate counsel's performance resulted in prejudice. Accordingly, petitioner's claim is DENIED.

### 4. Denial of Motions to Reopen

Petitioner claims that the trial court violated his due process rights to renew his *Pitchess* motion, and his motion to suppress. Neither of these claims was addressed by the state appellate court in its reasoned opinion.

United States District Court
For the Northern District of California

### A.   *Pitchess* Motion

Petitioner claims that the trial court violated his Sixth and Fourteenth Amendment rights when it denied his motion to reopen or renew his *Pitchess* motion (Pet. at 6A). Petitioner asserts that the trial court ignored the new evidence that appeared after the trial court denied his initial *Pitchess* motion (*id.*).

Prior to trial, petitioner filed a *Pitchess* motion to discover the personnel records of Officer Matthew Fox and any Daily City police officer who participated in the interrogation of Marilyn Hughes, petitioner's wife (Ans., Ex. ? 2 CT 453–80). Petitioner asserted that his wife did not consent to a search of their house, and that, after she was arrested and detained at the police station, Fox told Marilyn that if she did not cooperate with the police, she would lose custody of her children (*id.* at 476). A hearing was held on petitioner's motion, and good cause was found to conduct an *in camera* review of the relevant documents. After the documents were reviewed, the trial court stated that "those records contain no instance of relevant conduct within the meaning of the claim of fabrication on the part of Marilyn Hughes and no record reflecting any instance of relevant [mis]conduct" (*id.* at 518). Four months later, petitioner moved to reopen his *Pitchess* motion on grounds that he had just discovered that Fox had been formally investigated on charges of perjury. A hearing was held pursuant petitioner's allegations, and petitioner's motion denied (*id.*, Ex. JJ at 2).

Under California's *Pitchess* procedure, a criminal defendant has a limited right to discovery of peace officer personnel records, specifically of complaints made against the officer. *Pitchess v. Superior Court*, 11 Cal. 3d 531 (1974); Cal. Penal Code § 832.7, 832.8; Cal. Evid. Code §§ 1043–1045. The *Pitchess* procedure follows two steps. First, the defendant must make a written motion for peace officer personnel records that describes the records sought and that is supported by "affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has the records or information from the records."

1   *California Highway Scavone-Nancerol v. Superior Court*, 84 Cal. App. 4th 1010, 1019–20

2   (Cal. Ct. App. 2000); Cal. Evid. Code § 1043.  Second, if a showing of good cause is made,

3   the trial court will conduct an *in camera* review of the records to determine whether they

4   are relevant to the current proceedings.  *Id.* §§ 1043 & 1045.

5       In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the

6   suppression by the prosecution of evidence favorable to an accused upon request violates

7   due process where the evidence is material either to guilt or to punishment, irrespective of

8   the good faith or bad faith of the prosecution."  *Id.* at 87.  The Ninth Circuit has found that

9   the *Pitchess* preliminary requirement of good cause complies with Supreme Court

10  precedent under *Brady* (as modified in *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n. 15

11  (1987)) and has held that California's procedure is not contrary to Supreme Court

12  precedent.  *Harrison v. Lockyer*, 316 F.3d 1063, 1066 (9th Cir. 2003).

13      Petitioner's claim with without merit.  First, the only federal question presented by

14  petitioner is whether he was denied access to favorable and material evidence under *Brady*.

15  Petitioner has made no such showing.  Specifically, petitioner became aware of this

16  evidence prior to trial, and sought to obtain it.  "Where the defendant is aware of the

17  essential facts enabling him to take advantage of any exculpatory evidence, the

18  Government does not commit a *Brady* violation by not bringing the evidence to the

19  attention of the defense."  *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (quoting *United

20  States v. Brown*, 582 F.2d 197, 200 (2d Cir. 1978)).  Second, a reviewing federal habeas

21  court must accord factual determinations by the trial court the highest deference, as they are

22  "presumed to be correct."  28 U.S.C. 2254(e)(1).  In the instant matter, the trial court twice

23  found cause to review the records sought, reviewed them, and concluded that nothing in

24  such records was relevant to petitioner's case.  To rebut the presumption that the trial

25  court's credibility determination was correct, petitioner must provide clear and convincing

26  evidence that the state courts' determination of the facts was erroneous.  Here, petitioner

27  presents only conclusory allegations that the denial of his *Pitchess* motion amounts to a

28  constitutional deprivation.  *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).

United States District Court
For the Northern District of California

1  This is insufficient to establish a *Brady* violation.  Accordingly, petitioner is not entitled to

2  habeas relief on this claim.

3  **B.    Motion to Suppress**

4  Petitioner claims that the trial court violated his constitutional rights by not allowing

5  him to reopen his motion to suppress evidence seized during a search of his residence

6  conducted pursuant to Marilyn Hughes's alleged consent (Pet. at 6A).  Petitioner alleges

7  what is in fact a Fourth Amendment claim.  Such claims are not generally cognizable on

8  federal habeas review.  *Stone v. Powell*, 428 U.S. 465, 481–82, 494 (1976), bars federal

9  habeas review of Fourth Amendment claims unless the state did not provide an opportunity

10  for full and fair litigation of those claims.  The existence of a state procedure allowing an

11  opportunity for full and fair litigation of Fourth Amendment claims, rather than a

12  defendant's actual use of those procedures, bars federal habeas consideration of those

13  claims.  *See Gordon v. Duran*, 895 F.2d 610, 613–14 (9th Cir. 1990) (whether or not

14  defendant litigated Fourth Amendment claim in state court is irrelevant if he had

15  opportunity to do so under California law).  California state procedure provides an

16  opportunity for full litigation of a Fourth Amendment claim.  *See* Cal. Pen. Code § 1538.5.

17  Furthermore, petitioner actually litigated his Fourth Amendment claims. Accordingly,

18  petitioner's claim is not cognizable, and is hereby DENIED.

19  **5.    Informing Jury of Grant of Immunity**

20  Petitioner claims that the trial court violated his due process right to a fair trial when

21  it failed to informed the jury that prosecution witness, Jamecia Henry, was testifying under

22  a grant of immunity (Pet. at 6A).  The state appellate court did not rule on this claim in its

23  written opinion.

24  While in custody, Henry, who had acted as petitioner's getaway driver, made

25  statements in which she inculpated petitioner.  After her release, she alleged that she had

26  been coerced into giving such statements, and she asserted that she would assert her Fifth

27  Amendment rights if called to testify (Ans., Ex. N at 94–106).  The trial court ruled that

28  Henry could not assert her Fifth Amendment rights as to her participation in

12

1  the robberies, but that she could assert such rights as to any testimony regarding her

2  providing false statements to police (*id.* at 106–09).  Consequent to this, Henry was granted

3  use immunity (*id.* at 111–17),[2] a fact that was not disclosed to the jury <u>at the request of</u>

4  <u>defense counsel</u> (*id.* at 121).

5          Petitioner's claim, as stated, is not cognizable.  As the trial court excluded the

6  evidence upon a motion by defense counsel, petitioner has waived any free-standing

7  constitutional claim regarding the trial court's ruling.  However, petitioner's claim would

8  be cognizable if brought as an ineffective assistance counsel claim, which is how

9  petitioner's claim will be construed and analyzed.

10         Claims of ineffective assistance of counsel are examined under *Strickland v.*

11  *Washington*, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of

12  counsel, the Petitioner must establish two factors.  First, he must establish that counsel's

13  performance was deficient, i.e., that it fell below an "objective standard of reasonableness"

14  under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best

15  practices or most common custom," *Harrington v. Richter*, No. 09-587, slip op. 1 at 15

16  (U.S. Jan. 19, 2011) (quoting *Strickland*, 466 U.S. at 650).  "A court considering a claim of

17  ineffective assistance must apply a 'strong presumption' that counsel's representation

18  was within the 'wide range' of reasonable professional assistance." *Richter*, No. 09-587,

19  slip op. at 14 (quoting *Strickland*, 466 U.S. at 689).  Second, he must establish that he was

20  prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability

21  that, but for counsel's unprofessional errors, the result of the proceeding would have

22  been different." *Id.* at 694.  A reasonable probability is a probability sufficient to

23  undermine confidence in the outcome. *Id.*  Where the defendant is challenging his

24  conviction, the appropriate question is "whether there is a reasonable probability that,

25  absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at

26  695.

27

28         [2]  "Use immunity" means that although a witness may be prosecuted for the offense to
which the compelled testimony relates, the compelled statements cannot be used against the
witness. *See United States v. Plummer*, 941 F.2d 799, 803 (9th Cir. 1991).

United States District Court
For the Northern District of California

A difference of opinion as to trial tactics does not constitute denial of effective assistance, *see United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available, *see Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

In the instant matter, the answer to the question whether defense counsel rendered ineffective assistance will depend on the answer to whether the trial court's ruling was constitutionally correct under AEDPA.

In presenting a defense, a criminal defendant has "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary . . . the right to present a defense, [and] the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967).

Petitioner is not entitled to habeas relief on this claim because defense counsel's tactical decision was reasonable under the circumstances. Henry testified as a hostile prosecution witness, and in petitioner's favor, specifically that her statements inculpating petitioner were coerced (Ans., Ex. R at 624). Not calling attention to her grant of use immunity would bolster her believability in that the jury would not think she was offering self-incriminating testimony in exchange for some benefit. On such facts, defense counsel's request cannot plausibly be seen as a deficient performance. Furthermore, on such facts, prejudice cannot be shown, especially when one considers that Henry's testimony was on the whole beneficial to petitioner. Accordingly, petitioner's claim is DENIED.

United States District Court
For the Northern District of California

**6.      Sufficiency of the Evidence**

Petitioner claims that there was insufficient evidence to support his convictions for the Citibank and Bank of America robberies (Pet. at 6B).  More specifically, he contends that there was no "positive I.D." of him by any witness (*ibid.*).  Petitioner's claim is not that the evidence did not support the elements of the crime, but rather that he was never identified as the person who committed the crimes.  The state appellate court did not rule on this claim in its written opinion.

**A.      Citibank Robbery**

First, petitioner's assertion that there was no "positive I.D." of him is not supported by the record.  For example, Analiza Dilan, a teller at Citibank, identified  petitioner in court as the person who, in the words of the prosecutor, "robbed you, pointed the gun at you, [and] took the white cloth bag [which contained the bank's money]" (Ans., Ex. P at 222–23).  This identification followed upon Dilan's lengthy and detailed testimony regarding the events of the Citibank robbery, and her observations of videotape and still photograph images of petitioner (*id.* at 198–222).  Second, other witnesses provided strong evidence that petitioner was the Citibank robber.  For example, Roberto Pineda, a Citibank employee, testified at that a photograph he identified two years prior to trial as resembling the robber looked the same as petitioner sitting in the courtroom (*id.* at 301–04).  Kathleen Minasi, another Citibank employee, though not sure whether the defendant sitting in the courtroom was the man who robbed the bank, petitioner matched the image of the robber's face when she imagined it in her "mind's eye" (*id.* at 272).  From this evidence — the testimony described above, the statements of Henry, the videotape, photographic, and police dog evidence — a rational juror could find beyond a reasonable doubt that petitioner was the person who committed the charged crimes.

**B.      Bank of America Robbery**

As regards the Bank of America robbery, petitioner's assertion is flatly contradicted by the record.  Karen Veater, a Bank of America employee who witnessed the robbery, unequivocally identified petitioner as the robber when she testified at trial: "I'll never

United States District Court
For the Northern District of California

1    forget his face.  I mean, I dreamt about his face for like weeks afterward, and it's him (*id.*,

2    Ex. S at 829–30, 833).  Veater unwaveringly identified petitioner as the robber from the

3    time she saw the photo line-up on the day of the robbery, to the preliminary hearing, and at

4    trial (*id.* at 833–35, 838–39).  The jury also heard from Bernadette Romo, a Bank of

5    America employee who saw the robber at close range, unequivocally identified petitioner

6    as the robber (*id.*, Ex. R at 704).  From this evidence — the testimony described above, the

7    statements of Henry, the videotape, photographic, and police dog evidence — a rational

8    juror could find beyond a reasonable doubt that petitioner was the person who committed

9    the charged crimes.

10        Accordingly, petitioner's claims regarding the sufficiency of the evidence are

11    DENIED.

12   **7.        Motion to Disqualify the Prosecutor**

13        Petitioner claims that the trial court violated his due process right to a fair trial when

14    it denied his motion to disqualify the San Mateo County District Attorney's Office from

15    further participation in the case (Pet. at 7).  Petitioner based his motion and now his claim

16    on grounds that the prosecutor suborned perjury by having Detective Fox, who had been

17    accused of perjuring himself in another proceeding, testify at the original suppression

18    hearing (*id.*).

19        When a prosecutor obtains a conviction by the use of testimony which he knows or

20    should know is perjured, it has been consistently held that such conviction must be set aside

21    if there is any reasonable likelihood that the testimony could have affected the judgment of

22    the jury.  *See United States v. Agurs*, 427 U.S. 97, 103 (1976).

23        Petitioner's claim is unavailing.  As discussed above, the charges against Fox were

24    investigated, and found to lack merit.  As there is no evidence that Fox committed perjury,

25    the prosecutor presenting Fox's testimony did not amount to misconduct, or otherwise

26    violate petitioner's constitutional rights.  Accordingly, petitioner's claim is DENIED.

27

28

**8.      Jury Instruction Regarding Accomplice Testimony**

Petitioner claims that the trial court violated his right to due process when it failed to *sua sponte* give jury instructions regarding how the jury should treat the testimony of an accomplice and confidential informant, here Jamecia Henry (Pet. at 6B).  The state appellate court did not rule on this claim.  (As Henry cannot plausibly be considered a confidential informant — she was known to petitioner from the beginning, and testified openly in court — petitioner's assertions regarding a confidential informant instruction relating to Henry is facially insufficient to state a cognizable claim.)

A state trial court's failure to give an instruction does not alone raise a ground cognizable in federal habeas corpus proceedings.  *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).  The omission of an instruction is less likely to be prejudicial than a misstatement of the law.  *Walker v. Endell*, 850 F.2d 470, 475–76 (9th Cir. 1987).  A habeas petitioner whose claim involves failure to give a particular instruction, as opposed to a claim that involves a misstatement of the law in an instruction, bears an "especially heavy burden."  *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

The failure of a trial court to give an instruction *sua sponte* about the unreliability of accomplice testimony does not necessarily constitute plain error requiring a reversal.  *See United States v. Bosch*, 914 F.2d 1239, 1247 (9th Cir. 1990).  The need for the instruction must be analyzed in light of the circumstances in the case.  Other credibility instructions combined with arguments by counsel have been found sufficient to make the cautionary instruction unnecessary.  *Id.* at 1248.  Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury.  *See Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995).

Under these legal principles, petitioner's claim fails.  First, he has not shown that the failure of a trial court to give such instructions *sua sponte* is clearly contrary to clearly established legal precedent.  Second, the trial court gave sufficient instructions regarding the credibility of witnesses (Ans., Ex. V at 1274–77).  Third, also as noted above, Henry's

17

United States District Court
For the Northern District of California

testimony was largely favorable to petitioner. In such a circumstance, the lack of an accomplice instruction would have helped, not hurt, petitioner's defense. As such an instruction was not warranted by the circumstances of the case, petitioner's claim is DENIED.

**9.      Jury Instruction Regarding Informant Testimony**

Petitioner claims, without elaboration, that the trial court violated his due process rights when it failed to instruct the jury that Maurice Michael McCant was an accomplice as a matter of law (Pet. at 6C). The state appellate court did not address this claim in its written opinion.

McCant is petitioner's brother-in-law (Ans., Ex. R at 754). Henry testified that McCant had been the mastermind behind the robberies, had coerced her into participating in the Bank of America robbery, and had coerced her into confessing to police (*id.* at 637–40). McCant testified at trial that petitioner called him for help on the day of the Bank of America robbery (*id.* at 760–61), saying at first that he had been in a car accident, and then later confessing that he and Henry had robbed a bank (*id.* at 765). McCant denied being the mastermind of the robberies (*id.* at 773).

Petitioner's claim fails. First, he has not shown that he has a clearly established federal constitutional right to have an accomplice named as a matter of law. Second, he has not shown that McCant qualifies as an accomplice as a matter of law. An accomplice, according to California law, is "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." Cal. Pen. Code § 1111. Aside from Henry's allegations, there is no evidence in the record to indicate that McCant had any prior knowledge of, or involvement in, the robberies. Because Henry's factual assertions have changed so significantly since the investigation into this crime as to be less than credible, and because no other witness corroborates her testimony regarding McCant, the trial court's failure to declare McCant an accomplice as a matter of law cannot have caused a constitutional error. Accordingly, petitioner's claim is DENIED.

18

**10.    Alleged Prosecutorial Misconduct**

Petitioner's claims that the prosecutor committed misconduct by (1) withholding impeaching evidence regarding Detective Fox; (2) not informing the jury that Henry testified under a grant of use immunity; and (3) allowing McCant to have custody of Henry after her release from juvenile hall (Pet. at 6C).

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

Petitioner's claims are without merit because there is no evidence of misconduct, and therefore there is no evidence that petitioner's due process rights were not violated. As to (1), it was determined above that there was no evidence that the prosecutor withheld any information, or that if anything was withheld that the withholding did not result in prejudice. As to (2), the prosecutor was not allowed to mention the fact that Henry was testifying under a grant of immunity because the trial court had granted defense counsel's motion that such a fact not be mentioned. As to (3), there is no evidence that the prosecutor had anything to do with the placement of Henry with McCant. Accordingly, petitioner's prosecutorial misconduct claims are DENIED.

**11.    Assistance of Defense Counsel**

Petitioner claims that defense counsel rendered ineffective assistance by failing to (A) prepare correct jury instructions; (B) object to a sentencing enhancement; and (C) shield petitioner against convictions under two similar penal code sections. Petitioner further alleges that (D) the cumulative effect of all these errors resulted in prejudice. The state appellate court did not address these claims in its written opinion.

**A.    Jury Instructions**

Petitioner claims that defense counsel rendered ineffective assistance by failing to "prepare correct jury instructions [for] the jury" (Pet. at 6G). Petitioner's explanation of this claim is rather muddled. It appears that petitioner claims that the instructions misled the jury to believe enhancement allegations were elements of Counts 1–3, that is, the charges of attempted murder, assault with a semiautomatic firearm on a peace officer, and

19

United States District Court
For the Northern District of California

assault with a semiautomatic firearm.  The only specific jury instructions petitioner names

are CALJIC No. 17.19 ("Personal Use of a Firearm") and CALJIC No. 17.19.5

("Intentional and Personal Discharge of Firearm/Great Bodily Injury").

At trial, there were some instructional errors, as respondent concedes, though not of

the sort petitioner alleges happened.  The information sent to the jury correctly alleged

sentencing enhancements for (1) the personal discharge of a firearm, which were attached

to Counts 1–2, and 5–13, and (2) the personal use of a firearm, which was were attached to

Counts 14–17 (Ans., Ex. C at 822–35). However, the trial court, in its verbal instructions,

mistakenly told the jury that both enhancements applied to all counts, an error repeated in

full in the written instructions to the jury, and in part in the verdict forms, which asked the

jury to make a finding whether the firearm enhancement which was never charged in the

information was true (*id.*, Ex. V 1304–06; Ex. C at 625–26).  During deliberations, the jury

sent the trial court notes, notes which evidence some confusion, and the jury's verdicts

included an enhancement that was not charged in the information.  <u>Yet, when calculating</u>

<u>petitioner's sentence, the trial court took into account only those enhancement that were</u>

<u>actually charged in the correct information and found true by the jury.</u>

As to petitioner's claim, he has not shown that trial counsel's performance resulted

in prejudice, as evidenced by the fact that his sentence was based on the enhancements put

forth in the correct information.  Whatever instructional errors occurred, they had no effect

on the judgment or sentence petitioner finally received.  Accordingly, petitioner's claim is

DENIED.[3]

**(B)    Objecting to Sentencing Enhancement**

Petitioner claims that defense counsel rendered ineffective assistance by failing to

object to the sentencing enhancement (Cal. Pen. Code § 12022.53(c)) attached to Counts

---

[3] Petitioner also contends that the jury instructions led to an *Apprendi* error (Pet. at 6H–6I).  The Sixth Amendment requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  Petitioner's claim is unavailing because the charges and enhancements were submitted to the jury, which found petitioner guilty beyond a reasonable doubt and that the sentencing enhancements were true.

United States District Court
For the Northern District of California

1–2 and 5–13 because only one shot was fired, and the crimes on which Counts 1–2 and 5–13 are based arose from one continuous course of conduct (Pet. at 6K). Two claims arise from petitioner's argument. First, petitioner alleges that this failure to object resulted in a violation of the Double Jeopardy Clause (*id.* at 6K–6L). Petitioner, then, contends that the imposition of sentencing enhancements punishes him twice for the substantive crimes he committed. Second, petitioner alleges that there was insufficient evidence to find the sentencing enhancement true.

The Double Jeopardy Clause includes three distinct constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishment for the same offense." *Plascencia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir. 2006) (citations removed). Protection against multiple punishments for the same offense did not necessarily preclude cumulative punishments in a single prosecution. *Id.* The key to determining whether multiple charges and punishments violate double jeopardy is legislative intent. *Id.* (citation removed). When the legislature intends to impose multiple punishments, double jeopardy is not invoked. *Id.* (citation removed).

Under these legal principles, petitioner's claim cannot succeed. Petitioner has not shown that an objection by defense counsel would have been successful. It is both reasonable and not prejudicial for an attorney to forego a meritless objection. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). Indeed, it is unlikely that such an objection would have been successful because it was clear that sufficient evidence existed to support the charges in the information. Furthermore, as to petitioner's Double Jeopardy claim, it is clear by the fact that these sentencing enhancements exist that the California legislature intended to authorize multiple punishments for similar offenses.

Petitioner's insufficiency of evidence claim is also without merit. Contrary to petitioner's assertion, Cal. Pen. Code § 12022.53(c) requires only the personal and intentional discharge of a firearm, not that the discharge of the weapon causes great bodily injury, as required by Cal. Pen. Code § 12022.53(d), an enhancement with which petitioner

21

1  was not charged.  Defense counsel did not render a deficient performance by foregoing a

2  meritless objection.

3          Based on the foregoing, petitioner's claim is DENIED.

4          **C.      Failure to Shield Petitioner**

5          Petitioner claims that defense counsel rendered ineffective assistance by failing to

6  object to his being convicted with both assault with a semi-automatic firearm (Cal. Pen.

7  Code § 245(b)) and assault with a semi-automatic firearm upon a peace officer (*id.*

8  § 245(d)(2).  As noted above, his conviction under § 245(b) was vacated by the state

9  appellate court.  Petitioner's claim is not cognizable.  As the state appellate court vacated

10 the conviction at issue, there is no relief available on federal habeas review.  Accordingly,

11 petitioner's claim is DENIED.

12         **D.      Cumulative Error**

13         Petitioner's claim that defense counsel's cumulative errors resulted in prejudice is

14 DENIED.  As petitioner has not shown that defense counsel committed any errors, there

15 can be no cumulative error.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

16                                    **CONCLUSION**

17         The state court's adjudication of petitioner's claims did not result in a decision that

18 was contrary to, or involved an unreasonable application of, clearly established federal law.

19 Nor was the decision based on an unreasonable determination of the facts in light of the

20 evidence presented in the state court proceeding.  Accordingly, the petition is **DENIED**.

21         A certificate of appealability will not issue.  Reasonable jurists would not "find the

22 district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

23 *McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from

24 the Court of Appeals.

25         The Clerk shall enter judgment in favor of respondent and close the file.

26         **IT IS SO ORDERED.**

27 Dated:  February 16,  2011

                                    WILLIAM ALSUP
28                                  UNITED STATES DISTRICT JUDGE

                                          22